UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SOKOLSKYFILM, INC.**,<br><br>*Plaintiff*,<br>v.<br><br>**DUJOUR MEDIA GOUP, LLC,**<br><br>*Defendant*, | **COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGEMENT**<br><br>**Demand for Jury Trial** |

Plaintiff Sokolskyfilm, Inc., for its complaint against Defendant DuJour Media Group, LLC, alleges upon personal knowledge as to its own conduct, and on information and belief based on the investigation of Plaintiff's counsel, as to all other conducted alleged herein, as follows:

## I. INTRODUCTION

1. This action arises under the Copyright Act, 17 U.S.C. §§ 101 *et seq*. and 505, from Defendant DuJour Media Group, LLC's ("DuJour") unauthorized copying, display, and distribution of a copyrighted photograph owned by Plaintiff Sokolskyfilm, Inc.

2. DuJour, a luxury lifestyle magazine and website founded by longtime media entrepreneur Jason Binn, promotes itself as delivering "unrivaled access" to its "affluent and influential" readership.

3. Although DuJour presents itself as a sophisticated media brand and emphasizes intellectual property protection in its terms of use, DuJour unlawfully exploited Plaintiff's photograph without license or permission.

4. Despite multiple opportunities to avoid litigation, DuJour rebuffed Plaintiff's efforts at an amicable resolution—necessitating this lawsuit.

1

## II. THE PARTIES

5. Plaintiff Sokolskyfilm, Inc. ("Plaintiff" or "Sokolskyfilm") is a California Corporation with its principal place of business in Los Angeles County, California.

6. Defendant DuJour Media Group, LLC ("Defendant" or "DuJour") is a limited liability company organized under the laws of New York. DuJour's corporate headquarters is at 530 Seventh Ave, M1 New York, NY 10018 per its website and it is registered with the New York Department of State (ID: 4197003). On information and belief, DuJour operates internationally and maintains a substantial and continuous presence in this District through its publishing activities and commercial partnerships.

7. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that Defendant's officers, directors, vice-principals, agents, servants, directors, executives, management, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of Defendant's officers, directors, vice-principals, executives, management, agents, servants, or employees.

## III. JURISDICTION AND VENUE

8. This is a civil action for copyright infringement under the Copyright Act of 1976 (the "Copyright Act" or the "Act") and 17 U.S.C. §§ 101 *et seq*. and 505 *et seq*.

9. This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

10. This Court has personal jurisdiction over Defendant because it maintains its corporate headquarters in New York and in this District. Defendant availed itself of the

2

privileges of conducting business in this District and the State of New York and incurred benefits from the alleged infringement, such that this Court's assertion of jurisdiction over Defendants does nothing to offend traditional notions of fair play and due process.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 35 N.Y.C.P.L.R. §§ 302(a)(1)-(3) because Defendant (1) committed copyright infringement (2) in and expressly aimed at the forum state of New York (3) and caused harm in this District to Plaintiff.

12.     Venue is further proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendant is a corporation headquartered in this District.

## IV. FACTUAL ALLEGATIONS

**A. The Importance of US Copyright and Bundle of Rights**

13.     Copyright is a form of legal protection under Title 17 of the United States Code that grants creators of original works of authorship, including photographs, the exclusive rights to reproduce, distribute, display, and license those works.

14.     The importance of these rights has been recognized since the founding of the Republic, when the U.S. Constitution empowered Congress to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. As the Supreme Court has explained, "Copyright law encourages people to create original works and thereby ultimately serves the purpose of enriching the general public through access to creative works." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

15.     The Court has likewise recognized that by "establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate

ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985).

16. Section 106 of the Copyright Act grants copyright owners these exclusive rights and makes it unlawful to reproduce, create derivative works from, distribute, publicly perform, or publicly display copyrighted work except as expressly permitted by law, and provides for damages upon infringement.

**B. Background on Plaintiff & the Photo**

17. Photographer Melvin Sokolsky ("Sokolsky") was an iconic fashion photographer who passed away in 2022. Throughout his career, Sokolsky received numerous accolades, including 25 Clio Awards and a nomination from the Directors Guild, underscoring his impact on both photography and television commercials. His work has been exhibited in major museums worldwide, including the Museum of Modern Art and the Louvre, solidifying his status as a significant figure in contemporary art and fashion photography.

18. Plaintiff Sokolskyfilm, Inc. is the business entity that Melvin Sokolsky created during his lifetime to control and license his intellectual property. It is now operated by his son, cinematographer, Bing Sokolsky.

19. Sokolskyfilm continues to generate significant income from licensing fees for Sokolsky's copyrighted photographs, as well as from the sale of authorized fine art editioned prints of those photographs. These works remain protected and commercially valuable intellectual property.

20. Sokolskyfilm licenses Sokolsky's work through a rights-managed model, typically limited in scope, duration, and medium.

21. Sokolskyfilm maintains a public-facing website at www.sokolsky.com where it, *inter alia*, promotes Melvin Sokolsky's work and solicits licensing inquiries and fine art sales.

22. Sokolsky created the photograph titled *Side Kick* (also known as *Sidekick*) (hereinafter, the "Photo") as part of a series of fashion-centric images featuring model Dorothea McGowan in Paris in 1965. The Photo is shown here:



23. The Photo is registered with the U.S. Copyright Office under Registration No. TX 7-387-426, with an effective date of February 25, 2009.

24. Sokolskyfilm is the lawful owner of all rights, title, and interest in the Photo, including the copyright, by operation of law and through assignment from Melvin Sokolsky and/or his estate, and therefore has standing to bring this action.

25. During his lifetime, Sokolsky produced a limited run of fine art editioned prints of the Photo, several of which Sokolskyfilm has sold through both private sales and galleries for up to $85,000.00 each, reflecting the Photo's substantial value as a collectible fine art asset.

26.     Sokolskyfilm has on rare occasions licensed the Photo for limited display in fine art contexts but does not broadly license the Photo for general publication, editorial use, or commercial purposes.

27.     Sokolskyfilm has never licensed the Photo to DuJour for any purpose.

C.  **Defendant's Wrongful and Infringing Conduct**

28.     On or about Jun 16, 2025, Plaintiff discovered that DuJour had published the Photo on its website in an article purporting to show "Highlights from the 2018 Winter Antiques Show," where the image appeared beneath a prominent corporate advertising banner, as depicted below:



6

29. The Photo appeared on DuJour's website at https://dujour.com/gallery/highlights-from-the-winter-antiques/#slide-3, while the image file itself was displayed to the public and copyable from DuJour's server at https://dujour.com/wp-content/uploads/e/edc85a666c8b.jpg.

30. DuJour's use of the Photo contains no caption, credit, or contextual information indicating its relevance to the "2018 Winter Antiques Show." The image is not depicted as part of DuJour's event coverage, nor does it appear incidentally within any photos from the event; instead, DuJour displays the full-frame image in isolation, with no context or connection to the subject matter.

31. DuJour's article also misidentifies the title of the Photo, referring to it incorrectly as "Fly Sidekick," and more seriously misattributes authorship to "© Peter Fetterman"—a prominent gallerist and the proprietor of the Peter Fetterman Gallery in Santa Monica, California,[1] thereby compounding the misrepresentation and further distorting the Photo's provenance.

32. Upon reviewing its business records, Plaintiff could not locate any evidence that DuJour or its principal Jason Binn ever licensed the Photo for advertising or any other purpose.

33. Plaintiff, through counsel, contacted DuJour numerous times starting in July 2024 regarding the unauthorized use and, despite multiple requests for Defendant to produce a license, Defendant failed to do so.

34. DuJour did not act expeditiously to remove or disable access to the Photo from the article after receipt of Plaintiff's notice in July 2024. The image remained displayed within the article until sometime in August 2024, with Binn attributing the delay on issues with DuJour's email system.

---

[1] *See* https://www.peterfetterman.com/contact/.

35. On August 27, 2025, in response to Plaintiff's notice that merely removing the infringing use did not resolve the violation of Plaintiff's rights, Binn quipped that DuJour was "completely aware of the customary law that allows free usage where there is no commercial application involved"[2] and dismissed Plaintiff's efforts to resolve the matter short of litigation as "meaningless and a fruitless attempt at extortion" and a "persistent ridiculous request."

36. Despite the foregoing, DuJour never removed the Photo from the server hosting its website, and the Photo remains publicly viewable and copyable as of the date of this filing, as reproduced below. This ongoing availability underscores DuJour's reckless disregard for Plaintiff's rights and its failure to take even basic remedial action, supporting a finding of willful infringement under the Copyright Act.



37. Given its tenuous relation to the DuJour article, the Photo's absence would not have diminished the article; thus, Defendant appears to have used Plaintiff's Photo solely to enhance the article's appeal, attract readers, and drive advertising revenue, all without authorization.

38. By using the Photo without a license, permission, or notifying Plaintiff, Defendant

---

[2] Of course, no such "customary law" exists; the Copyright Act provides no broad exception permitting unlicensed copying and distribution based on whether a use is "commercial" or "non-commercial."

8

deprived Plaintiff of the opportunity to negotiate a reasonable license fee. Had Defendant afforded Plaintiff this opportunity, Plaintiff would have required a license and corresponding fee for the use, in keeping with its standard business practices.

39. Upon information and belief, DuJour did not inadvertently publish the Photo, but rather selected and uploaded the image to enhance the for-profit publication's contents.

40. Upon information and belief, DuJour possessed and exercised the right and ability to control the Photo's use in the DuJour article, including by selecting and editing the article's content, hosting and publishing the Photo on its website, and determining whether to display or remove the Photo in its editorial discretion.

41. Upon information and belief, Defendant received a direct financial benefit from its unauthorized use of the Photo, including increased page views and reader engagement, resulting advertising and subscription revenue, and the overall promotion of Defendant's brand tied to traffic to the infringing article.

42. Plaintiff is informed and believes that DuJour, in its unauthorized use, failed to preserve the Photo's copyright management information (CMI), including crediting Plaintiff or Sokolsky as the author. This omission contributed to and enabled the infringement.

43. Plaintiff is further informed and believes that the removal or omission of CMI was done intentionally, with the purpose of concealing the infringing nature of the use.

44. DuJour is a sophisticated commercial media publisher with years of publishing experience and, upon information and belief, routinely enforces its own rights in proprietary content.

45. Unable to resolve its claims against DuJour, Plaintiff has been forced to initiate litigation, incurring additional and unnecessary legal costs.

46. By exploiting (and continuing to exploit) Plaintiff's copyright Photo without license, permission, or legal excuse, and with awareness that such authorization was required by law, DuJour has willfully infringed Plaintiff's rights in violation of the Copyright Act and caused damages in an amount to be determined at trial.

### D. Background on Defendant as a Sophisticated Media Outlet

47. Defendant DuJour Media Group, LLC promotes itself as an award-winning publisher of *DuJour* Magazine and dujour.com, producing content on fashion, culture, art, entertainment, and related topics.[3] Highlighting profiles in *Forbes*, industry recognition from *Adweek*, and multiple Webby Awards, DuJour claims a combined print and digital readership exceeding one million across national and local editions.[4]

48. DuJour markets itself as "where luxury lives," promising "unrivaled access to an audience of the most affluent and influential consumers," claiming to reach the top three percent of U.S. wealth holders—those "who control over 70% of the nation's luxury [spending]"—and asserts that this readership community spends more than $15 billion annually.[5]

49. DuJour was launched by its principal, Jason Binn, a longtime magazine publisher and media entrepreneur who serves as DuJour's founder, owner, and Chief Executive Officer. Binn previously founded and managed Niche Media, which produced a portfolio of luxury regional titles including *Aspen Peak, Boston Common, Capitol File, Gotham, Hamptons, Los Angeles Confidential, Michigan Avenue, Ocean Drive, Philadelphia Style,* and *Vegas.* After selling Niche Media, Binn remained in executive leadership until 2010.

---

[3] DuJour, *About Us*, https://dujour.com/about/ (last visited Sept. 15, 2025).
[4] DuJour Media Group, *2025 Media Kit* (2025), available at https://dujour.com/wp-content/uploads/2025/01/663e677c2cc8.pdf (last visited Sept. 15, 2025).
[5] See DeJour, *About Us*, supra note 3; DuJour Media Group, *2025 Media Kit*, supra note 4.

50. In addition to his magazine ventures, Binn created "BinnShot" (www.binnshots.com) to brag about and show Binn in photos with celebrities, later forming a strategic partnership with Getty Images and WireImage to distribute his photo archives.

51. Binn's publishing and photography experience underscores his—and by extension DuJour's—sophistication in the monetization and licensing of visual works.

52. DuJour monetizes its editorial content through advertising, sponsorships, brand partnerships, and reader engagement.

53. Leveraging its affluent audience, DuJour's rate sheet shows that DuJour charges up to $45,000 for a single print insertion, $34,000 per digital insertion, and $65,000 for integrated placements, reflecting the direct financial benefit it derives from attracting luxury consumers.[6]

54. DuJour publishes Terms and Conditions (https://dujour.com/terms-and-privacy/) that prohibit users from modifying, copying, publishing, displaying, transmitting, adapting, or otherwise exploiting content without prior written consent, require that all copyright notices remain intact, and declare all site content to be DuJour's copyrighted property. The Terms further require that by submitting content, users grant DuJour a perpetual, irrevocable license to exploit that content and waive any "moral rights." On every page of its website, DuJour reinforces this position with the notice "© DUJOUR MEDIA. ALL RIGHTS RESERVED."

55. DuJour's Terms also instruct users that it "respects the intellectual property rights of others, and require[s] that the people who use the dujour.com Web Site do the same," underscoring its knowledge of copyright law and its responsibility to comply with it.

---

[6] DuJour Media Group, *2025 Rate Sheet* (2025), https://dujour.com/wp-content/uploads/2025/01/fc23677c2cca.pdf (last visited Sept. 15, 2025).

11

56. As a commercial publisher with decades of industry experience, DuJour exercises editorial discretion over the articles and photographs it publishes, including the ability to select, edit, and remove content from its website.

57. DuJour's own marketing, rate sheets, and intellectual property policies demonstrate that it is a sophisticated publisher well aware of the value of intellectual property and the commercial leverage of visual content. Given this sophistication, DuJour knew or should have known of Plaintiff's rights and its own responsibilities under the Copyright Act.

58. By exploiting Plaintiff's copyrighted Photo without a license, permission, or legal excuse, and with knowledge that such authorization was required by law, Defendant DuJour has willfully infringed Plaintiff's rights in violation of the Copyright Act and caused damages in an amount to be determined at trial.

## V. CAUSES OF ACTION

### COUNT 1

### Infringement of Copyright (17 U.S. Code §§ 106, 501)

59. Plaintiff incorporates by reference each and every allegation set forth above.

60. Plaintiff is, and at all relevant times has been, the sole owner of the copyrighted Photo at issue, with all exclusive rights under the Copyright Act.

61. Pursuant to 17 U.S.C. § 106, Plaintiff holds the exclusive rights to reproduce (copy), distribute, display, perform, and create derivative works from the Photo.

62. As described above, Defendant, without Plaintiff's permission or consent, exploited the Photo on its commercial website for commercial purposes.

63. Defendant's unauthorized use deprived Plaintiff of licensing revenue and violated Plaintiff's exclusive rights under 17 U.S.C. § 106.

64. Defendant never sought permission or obtained a license from Plaintiff despite Defendant knowing, or at minimum having reason to know, that a license was required to exploit the Photo on its website.

65. Upon information and belief, Plaintiff never granted authorization—directly or indirectly—to Defendant or any of its partners, agents, members, licensees, affiliates, employees, contractors, customers, subscribers, or retailers to use, copy, publicly display, distribute, license, manipulate, or otherwise exploit the Photo.

66. Based on Defendant's extensive experience handling and monetizing copyrighted works in the publishing and luxury marketplace, Plaintiff is informed and believes that Defendant's acts of infringement were undertaken with, at minimum, a reckless disregard for, and indifference to, Plaintiff's exclusive rights under the Copyright Act, supporting a finding of willful infringement.

67. Plaintiff has suffered damages as a direct and proximate result of Defendant's infringement of the copyrighted Photo.

68. As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to an award of actual damages and profit pursuant to 17 U.S.C. § 504(b), or alternatively statutory damages pursuant to 17 U.S.C. § 504(c), with amounts to be proved at trial. This election of remedies can be made any time before judgment is entered.

69. Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff, unless enjoined by this Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights in Plaintiff's copyrighted Photo by Defendant and any persons acting in concert with the Defendant.

## COUNT 2

### Removal of Copyright Management Information (17 U.S.C. §§ 1202, 1203, et seq.)

70.Plaintiff incorporates by this reference each and every allegation set forth above.

71.The original copy of Plaintiff's copyrighted Photo contained copyright management information ("CMI") within the meaning of 17 U.S.C. § 1202, including, but not limited to, visible text identifying Plaintiff as the author, the title of the work, and its date of creation.

72.Upon information and belief, Defendant knowingly and with the intent to induce, enable, facilitate, or conceal infringement provided copyright management information that is false, or distributed or imported for distribution copyright management information that is false, causing damages. 17 U.S.C. § 1202(a).

73.Upon information and belief, Defendant, intentionally removed, omitted, or failed to include Plaintiff's CMI when reproducing the Photo, knowing or having reasonable grounds to know that such conduct would enable, facilitate, and/or conceal the use, a violation of 17 U.S.C. § 1202(b).

74.As a result of Defendant's wrongful conduct alleged herein, Plaintiff is entitled under 17 U.S.C. § 1203(c)(2) to recover the actual damages it sustained, and will sustain, along with any profits and advantages obtained by Defendant attributable to the violation, together with costs and reasonable attorney's fees per § 1203(b)(5).

75.Alternatively, Plaintiff may elect to recover statutory damages under 17 U.S.C. § 1203(c)(3) of not less than $2,500 and not more than $25,000 for each violation of § 1202, together with costs and reasonable attorney's fees per § 1203(b)(5).

## VI. JURY TRIAL DEMANDED

76. Pursuant to Fed. R. Civ. P. 38(b), Plaintiff respectfully demands a trial by jury of all the claims asserted in this Complaint so triable.

## VII. RELIEF REQUESTED

77. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment on his behalf adjudging and decreeing that:

   a. For an injunction providing: "Defendant shall be and hereby is enjoined from directly or indirectly infringing Plaintiff's rights under federal or state law in copyrighted photos, whether now in existence or later created, that are owned or controlled by Plaintiff ("Plaintiff's Photo"), including without limitation by using social media, Internet embedding technology, or any online media distribution system to reproduce (i.e. download) any of Plaintiff's photos, to distribute (i.e. cause to be displayed) any of Plaintiff's copyrighted photos, or to make any of Plaintiff's photos available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Defendant also shall destroy all physical (i.e., printed) copies of any of Plaintiff's photos in Defendant's possession, as well as any of Plaintiff's photos that Defendant has downloaded onto any computer hard drive or server."

   b. For Defendant to be required to account for all profits, income, receipts, or other benefits derived by Defendant as a result of their unlawful conduct.

   c. For Plaintiff to be awarded either: (i) the actual damages Plaintiff has sustained and Defendant's profits, gains, or advantages of any kind attributable to Defendant's infringement of Plaintiff's copyrighted Photos pursuant to 17 U.S.C. § 504(b), or

statutory damages of up to $150,000, including enhanced damages for willful or reckless infringement, pursuant to 17 U.S.C. § 504(c).

d. For Plaintiff to be awarded either: (i) the actual damages Plaintiff has sustained and any profit obtained by Defendant for its violation of 17 U.S.C. § 1202 under 17 U.S.C. § 1203(c)(2), including attorney's fees and costs under 17 U.S.C. § 1203(b)(5). ; or (ii) a minimum of $2,500 per violation and maximum of $25,000 per violation of 17 U.S.C. § 1202 under 17 U.S.C. § 1203(c)(3).

e. For Plaintiff to be awarded Plaintiff's costs and expenses incurred in bringing this action, including all reasonable attorneys' fees incurred herein, pursuant to 17 U.S.C. § 505 and/or 17 U.S.C. § 1203(b).

f. For Plaintiff to be awarded pre-judgment interest from the time of the infringement.

Dated: September 16, 2025.

Respectfully submitted,

**DUNCAN FIRM, P.A**

*/s/ James H. Bartolomei Esq.*
James H. Bartolomei Esq.
SDNY Bar JB7747
809 W. 3rd Street
Little Rock, Arkansas 72201
501-228-7600
james@duncanfirm.com

and

**HOBEN LAW**
Bryan D. Hoben, Esq.
1112 Main Street
Peekskill, New York 10566
347-855-4008
bryan@hobenlaw.com

*Attorneys for Plaintiff*

16